NO. 07-07-0164-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

AUGUST 24, 2009
______________________________

ANTIONE DESHAN GENTRY, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_________________________________

FROM THE 108TH DISTRICT COURT OF POTTER COUNTY;

NO. 54,585-E; HONORABLE ABE LOPEZ, JUDGE
_______________________________


Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.
MEMORANDUM OPINION
Â Â Â Â Â Â Â Â Â Â Appellant Antione Deshan Gentry plead guilty to possession of a controlled
substance and brings this appeal from the trial courtâs denial of his motion to suppress. 
Through one point of error, appellant contends that by denying his motion, the trial court
abused its discretion. We affirm.
Â 
Â 
Background
Â Â Â Â Â Â Â Â Â Â After a traffic stop, appellant was charged by indictment with intentionally and
knowingly possessing cocaine in an amount of one gram or more but less than four
grams.


 The indictment later was amended to include an enhancement paragraph based
on a prior felony conviction. Thereafter, appellant filed a motion to suppress the evidence
found during the stop, arrest, and search. Following a hearing, the trial court denied
appellantâs motion to suppress. Appellant, pursuant to a plea agreement, plead guilty to
the offense charged and was sentenced to nine years of imprisonment and a $1,000 fine. 
This appeal followed.
Â Â Â Â Â Â Â Â Â Â One witness, an Amarillo police officer, testified at the hearing on appellantâs motion
to suppress. He testified that about noon on the day in question he saw a vehicle with a
temporary tag traveling ahead of him. He then observed the driver, identified later as
appellant, make a wide right turn onto Sanborn Street. Concluding he had observed two
traffic violations, one involving the tag and the other involving the wide turn, the officer
conducted a traffic stop. When he made contact with appellant and requested his driverâs
license, appellant told him he did not have one. Appellant then got out of the car and the
officer requested consent to search him because â[h]e was shakingâ and said he didnât
have any identification. 
Â 
Â Â Â Â Â Â Â Â Â Â During his search of appellant, the officer located a wallet containing identification. 
The officer conducted a check on appellantâs identification, finding seven outstanding
warrants. The officer placed appellant under arrest on the warrants and double-checked
the dealerâs tags on the car to ensure the vehicle was not stolen. The officer determined
that the tag was legitimate. The officer then searched the vehicle incident to arrest and
found narcotics that resulted in appellantâs present prosecution. 
Analysis
Â Â Â Â Â Â Â Â Â Â In appellantâs point of error, he contends the trial court abused its discretion by
denying the motion to suppress evidence derived from the traffic stop as there was no
âinherently illegal actâ to justify the warrantless stop. Appellant does not appear to contest
his arrest based on the outstanding warrants or the search incident to arrest.


 Instead, he
argues the initial stop was not based on reasonable suspicion. We will address only that
contention. 
Â Â Â Â Â Â Â Â Â Â Â Â A trial court's ruling on a motion to suppress is reviewed for abuse of discretion.
Oles v. State, 993 S.W.2d 103, 106 (Tex.Crim.App.1999). In a suppression hearing, the
trial court is the sole judge of the credibility of the witnesses and the weight to be given
their testimony. State v. Ross, 32 S.W.3d 853, 855-56 (Tex.Crim.App.2000). Under the
applicable standard, we will review the record evidence and all reasonable inferences
therefrom in the light most favorable to the trial court's ruling. Villarreal v. State, 935
S.W.2d 134, 139 (Tex.Crim.App.1996); Taylor v. State, 20 S.W.3d 51, 54-55 (Tex.App.â
Texarkana 2000, pet. ref'd).
Â Â Â Â Â Â Â Â Â Â In reviewing trial court rulings on matters such as motions to suppress, appellate
courts afford almost total deference to trial court determinations of historical facts. Guzman
v. State, 955 S.W.2d 85, 89 (Tex.Crim.App.1997). However, detention and reasonable
suspicion are by nature legal concepts and are properly subject to de novo review. Hunter
v. State, 955 S.W.2d 102, 107 (Tex.Crim.App.1997); Sanders v. State, 992 S .W.2d 742,
744 (Tex.App.âAmarillo 1999, pet. ref'd). Accordingly, for purposes of Fourth Amendment
analysis we give appropriate deference to the trial court's determination of historical facts,
but we review the decision of the trial court de novo as to whether the historical facts,
viewed from the standpoint of an objectively reasonable person so situated as was the
police officer, amount to âreasonable suspicionâ sufficient to justify an investigatory
detention. Ornelas v. United States, 517 U.S. 690, 697-99, 116 S.Ct. 1657, 1661-62, 134
L.Ed.2d 911 (1996); Guzman, 955 S.W.2d at 89.
Â Â Â Â Â Â Â Â Â Â At the hearing, the officer testified that appellantâs vehicle first attracted his attention
because it had a dealerâs or paper tag rather than a regular license plate. He noted that
such tags may be suspicious, particularly if they are unreadable, because the police
department commonly finds stolen cars with temporary tags covering the hard plates. He
also testified that because of the variety of types of temporary tags, it is hard to tell exactly
what type of plate is on a car when driving behind it. Here, the officer said the tag was
attached only in one place, causing it to flap and making it difficult to read in traffic. 
Â Â Â Â Â Â Â Â Â Â With respect to appellantâs right turn, the officer stated appellant turned into the
center of Sanborn Street. The record indicates the residential street had no center stripe. 
The officer said appellant was âstraddlingâ the center of the road as he turned, and agreed
with the prosecutor that the center of appellantâs car was in the center of the road. 
Â Â Â Â Â Â Â Â Â Â Evidence showed that a pothole or deteriorated portion of the asphalt roadway was
located on the right side of the roadway, about half a block, or â12 housesâ from the
intersection at which appellant made his turn. The officer said he stopped appellant based
on both of his observed violations.


 
Â Â Â Â Â Â Â Â Â Â While a police officer must have probable cause for a full custodial arrest, a mere
stop of an individual for the purposes of investigation does not require such substantial
justification. Gajewski v. State, 944 S.W.2d 450, 452 (Tex.App.âHouston [14th Dist.] 1997,
no pet.), citing Terry v. Ohio, 392 U.S. 1, 20-22, 88 S.CT. 1868, 1879-81, 20 L.Ed.2d 889
(1968). Thus, for a temporary detention, an officer must have reasonable suspicion,
shown through specific articulable facts, that some unusual activity is or has occurred, that
the detained person is connected with the activity, and that the unusual activity is related
to the commission of a crime. Hoag v. State, 728 S.W.2d 375, 378-80 (Tex.Crim.App.
1987). This determination is based on the totality of the circumstances. Garcia v. State,
43 S.W.3d 527 (Tex.Crim.App. 2001). There is no requirement that a particular statute be
violated in order to give rise to reasonable suspicion. Gajewski, 944 S.W.2d at 452;
Lockett v. State, No. 01-08-00225-CR, 2009 WL 40234, *3 (Tex.App.âHouston [1st Dist.]
Jan. 8, 2009, no pet.) (mem. op., not designated for publication). The subjective intent of
the officer is irrelevant to the determination of the existence of reasonable suspicion;
instead, we apply an objective standard, inquiring only whether the evidence reveals an
objective basis for the stop. Garcia, 43 S.W.3d at 530; Powell v. State, 5 S.W.3d 369,
376-77 (Tex.App.âTexarkana 1999, pet. refâd), cert. denied, 529 U.S. 1116, 120 S.Ct.
1976, 146 L.Ed.2d 805 (2000).
Â Â Â Â Â Â Â Â Â Â We find the trial court properly could have concluded the officer testified to facts
giving rise to a reasonable suspicion appellant violated a traffic law in the manner of his
right turn.


 Appellant and the State both refer to section 545.101 of the Transportation
Code, which requires a driver to make right turns as closely as practicable to the right-hand
curb or edge of the roadway. Tex. Transp. Code Ann. Â§ 545.101(a) (Vernon 1999). At the
hearing, appellant relied on the obstruction in the road to explain his wide turn. See Tex.
Transp. Code Ann. Â§ 545.051(a)(2) (Vernon 1999) (requiring driving on the right half of the
roadway unless, inter alia, an obstruction necessitates moving to the left). But evidence
shows that the pothole or deteriorated asphalt was not located at the intersection but was
â12 housesâ down the street from the intersection. The trial court was free to determine
the weight to be given the evidence of an obstruction in the road. There also was some
uncertainty in the testimony as to whether appellantâs vehicle was merely near the center
of Sanborn or was in the center of the street, but the trial court was free also to accept the
testimony he was âstraddlingâ the center. See Guzman, 955 S.W.2d at 89; Ross, 32
S.W.3d at 855-56.
Â Â Â Â Â Â Â Â Â Â Appellant contends our determination of the reasonableness of the stop should be
controlled by Hernandez v. State, 983 S.W.2d 867, 869 (Tex.App.âAustin 1998, pet. refâd). 
There, the officer stopped a vehicle immediately after observing it drift briefly over the white
line dividing two lanes of traffic traveling in the same direction. The court concluded that
this single brief instance of drifting slightly into an adjacent lane of traffic did not alone
provide the officer with reasonable suspicion that a criminal traffic offense had been
committed. Id. A similar conclusion was reached in Ehrhart v. State, 9 S.W.3d 929
(Tex.App.âBeaumont 2000, no pet.) involving an allegation of lane straddling, and State
v. Tarvin, 972 S.W.2d 910, 912 (Tex. App.âWaco 1998, no pet.) involving an allegation of
lane drifting. As the State points out, each of these cases involved suspected violations
of the statute requiring drivers to drive within a single lane of traffic. See Tex. Transp.
Code Ann. Â§ 545.060 (Vernon 1999). That statute further provides a driver may not move
from the single lane unless that movement can be made safely. Id. at 545.060(a)(2). The
holdings of the cases on which appellant relies depended at least in part on the absence
of evidence the defendantâs action of crossing a lane dividing line was unsafe. See, e.g.,
Hernandez, 983 S.W.2d at 870-71. Transportation Code Â§ 545.101, on which the State
relies here, contains no exception for deviations made safely. See Tex. Transp. Code Ann.
Â§ 545.101(a) (Vernon 1999). Appellantâs cited cases are thus inapposite. 
Â Â Â Â Â Â Â Â Â Â The evidence presented at the hearing on appellantâs motion to suppress supports
the trial courtâs ruling. Accordingly, we overrule appellantâs sole point of error on appeal
and affirm the trial courtâs judgment.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â James T. Campbell

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice











Do not publish.



tyle-priority:35;
 mso-style-qformat:yes;
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 mso-pagination:widow-orphan;
 font-size:9.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 color:#4F81BD;
 mso-bidi-language:EN-US;
 font-weight:bold;}
span.MsoFootnoteReference
 {mso-style-noshow:yes;
 mso-style-priority:99;
 vertical-align:super;}
p.MsoTitle, li.MsoTitle, div.MsoTitle
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:15.0pt;
 margin-left:0in;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoTitleCxSpFirst, li.MsoTitleCxSpFirst, div.MsoTitleCxSpFirst
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 mso-style-type:export-only;
 margin:0in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoTitleCxSpMiddle, li.MsoTitleCxSpMiddle, div.MsoTitleCxSpMiddle
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 mso-style-type:export-only;
 margin:0in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoTitleCxSpLast, li.MsoTitleCxSpLast, div.MsoTitleCxSpLast
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:15.0pt;
 margin-left:0in;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoSubtitle, li.MsoSubtitle, div.MsoSubtitle
 {mso-style-priority:11;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Subtitle Char";
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:12.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 letter-spacing:.75pt;
 mso-bidi-language:EN-US;
 font-style:italic;}
p.MsoAcetate, li.MsoAcetate, div.MsoAcetate
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Balloon Text Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoNoSpacing, li.MsoNoSpacing, div.MsoNoSpacing
 {mso-style-priority:1;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-parent:"";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraph, li.MsoListParagraph, div.MsoListParagraph
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:.5in;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraphCxSpFirst, li.MsoListParagraphCxSpFirst, div.MsoListParagraphCxSpFirst
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:.5in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraphCxSpMiddle, li.MsoListParagraphCxSpMiddle, div.MsoListParagraphCxSpMiddle
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:.5in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraphCxSpLast, li.MsoListParagraphCxSpLast, div.MsoListParagraphCxSpLast
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:.5in;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoQuote, li.MsoQuote, div.MsoQuote
 {mso-style-priority:29;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Quote Char";
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 color:black;
 mso-bidi-language:EN-US;
 font-style:italic;}
p.MsoIntenseQuote, li.MsoIntenseQuote, div.MsoIntenseQuote
 {mso-style-priority:30;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Intense Quote Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:.65in;
 margin-bottom:14.0pt;
 margin-left:.65in;
 line-height:115%;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD .5pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 color:#4F81BD;
 mso-bidi-language:EN-US;
 font-weight:bold;
 font-style:italic;}
span.MsoSubtleEmphasis
 {mso-style-priority:19;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 color:gray;
 font-style:italic;}
span.MsoIntenseEmphasis
 {mso-style-priority:21;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
span.MsoSubtleReference
 {mso-style-priority:31;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 color:#C0504D;
 text-decoration:underline;
 text-underline:single;}
span.MsoIntenseReference
 {mso-style-priority:32;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 color:#C0504D;
 letter-spacing:.25pt;
 font-weight:bold;
 text-decoration:underline;
 text-underline:single;}
span.MsoBookTitle
 {mso-style-priority:33;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 letter-spacing:.25pt;
 font-weight:bold;}
p.MsoTocHeading, li.MsoTocHeading, div.MsoTocHeading
 {mso-style-noshow:yes;
 mso-style-priority:39;
 mso-style-qformat:yes;
 mso-style-parent:"Heading 1";
 mso-style-next:Normal;
 margin-top:24.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 font-size:14.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#365F91;
 mso-bidi-language:EN-US;
 font-weight:bold;}
span.Heading1Char
 {mso-style-name:"Heading 1 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 1";
 mso-ansi-font-size:14.0pt;
 mso-bidi-font-size:14.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#365F91;
 font-weight:bold;}
span.Heading2Char
 {mso-style-name:"Heading 2 Char";
 mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 2";
 mso-ansi-font-size:13.0pt;
 mso-bidi-font-size:13.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;}
span.Heading3Char
 {mso-style-name:"Heading 3 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 3";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;}
span.Heading4Char
 {mso-style-name:"Heading 4 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 4";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
span.Heading5Char
 {mso-style-name:"Heading 5 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 5";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;}
span.Heading6Char
 {mso-style-name:"Heading 6 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 6";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;
 font-style:italic;}
span.Heading7Char
 {mso-style-name:"Heading 7 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 7";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 font-style:italic;}
span.Heading8Char
 {mso-style-name:"Heading 8 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 8";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;}
span.Heading9Char
 {mso-style-name:"Heading 9 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 9";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 font-style:italic;}
span.TitleChar
 {mso-style-name:"Title Char";
 mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Title;
 mso-ansi-font-size:26.0pt;
 mso-bidi-font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;}
span.SubtitleChar
 {mso-style-name:"Subtitle Char";
 mso-style-priority:11;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Subtitle;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 letter-spacing:.75pt;
 font-style:italic;}
span.QuoteChar
 {mso-style-name:"Quote Char";
 mso-style-priority:29;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Quote;
 color:black;
 font-style:italic;}
span.IntenseQuoteChar
 {mso-style-name:"Intense Quote Char";
 mso-style-priority:30;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Intense Quote";
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
p.NewDocument, li.NewDocument, div.NewDocument
 {mso-style-name:"New Document";
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:12.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
span.BalloonTextChar
 {mso-style-name:"Balloon Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Balloon Text";
 mso-ansi-font-size:8.0pt;
 mso-bidi-font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-ascii-font-family:Tahoma;
 mso-hansi-font-family:Tahoma;
 mso-bidi-font-family:Tahoma;
 mso-bidi-language:EN-US;}
span.HeaderChar
 {mso-style-name:"Header Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Header;
 mso-ansi-font-size:11.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-language:EN-US;}
span.FooterChar
 {mso-style-name:"Footer Char";
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Footer;
 mso-ansi-font-size:11.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-language:EN-US;}
span.FootnoteTextChar
 {mso-style-name:"Footnote Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Footnote Text";
 font-family:"Calibri","sans-serif";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
span.Hyperlink1
 {mso-style-name:Hyperlink1;
 mso-style-unhide:no;
 mso-style-parent:"";
 mso-ansi-font-size:12.0pt;
 color:#0A3D7B;
 text-decoration:none;
 text-line-through:none;}
span.SpellE
 {mso-style-name:"";
 mso-spl-e:yes;}
span.GramE
 {mso-style-name:"";
 mso-gram-e:yes;}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 font-size:10.0pt;
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:Arial;
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:Arial;}
 /* Page Definitions */
 @page
 {mso-footnote-separator:url("07-09-0314.cr2%20opinion_files/header.htm") fs;
 mso-footnote-continuation-separator:url("07-09-0314.cr2%20opinion_files/header.htm") fcs;
 mso-endnote-separator:url("07-09-0314.cr2%20opinion_files/header.htm") es;
 mso-endnote-continuation-separator:url("07-09-0314.cr2%20opinion_files/header.htm") ecs;}
@page WordSection1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in .25in 1.0in;
 mso-header-margin:.5in;
 mso-footer-margin:9.75pt;
 mso-title-page:yes;
 mso-footer:url("07-09-0314.cr2%20opinion_files/header.htm") f1;
 mso-paper-source:0;}
div.WordSection1
 {page:WordSection1;}
-->








NO. 07-09-00314-CR

Â 

IN THE COURT OF APPEALS

Â 

FOR THE
SEVENTH DISTRICT OF TEXAS

Â 

AT
AMARILLO

Â 

PANEL B

Â 



APRIL
6, 2011

Â 



Â 

JAMMIE LEE MOORE, APPELLANT

Â 

v.

Â 

THE STATE OF TEXAS, APPELLEE 



Â 



Â 

 FROM THE 108TH DISTRICT COURT OF
POTTER COUNTY;

Â 

NO. 57,934-E; HONORABLE DOUGLAS WOODBURN, JUDGE



Â 



Â 

Before QUINN,
C.J., and CAMPBELL and HANCOCK, JJ.

Â 

OPINION

Â Â Â Â Â Â Â Â Â Â Â  Appellant,
Jammie Lee Moore, was convicted of possession of
methamphetamine in an amount of four grams or more but less than 200 grams,[1]
enhanced by a plea of true to two prior felony convictions.Â  The jury sentenced appellant to confinement
in the Institutional Division of the Texas Department of Criminal Justice for a
period of 50 years.Â  The trial court
ordered appellantÂs sentence to be served after he had completed serving his
sentence in Cause No. 55,555-E.Â 
Appellant has appealed, and we will affirm the judgment of the trial
court as modified.

Â 

Factual and Procedural Background

Â Â Â Â Â Â Â Â Â Â Â  Appellant
was convicted of possession of methamphetamine in an amount of four grams or
more but less than 200 grams and sentenced, after a plea of true to two prior
felony convictions, to confinement for 50 years in the ID-TDCJ.Â  Appellant has not attacked the juryÂs finding
of guilt; therefore, only such of the factual background as is relevant to the
issues raised will be recited in this opinion. 

Â Â Â Â Â Â Â Â Â Â Â  After
the jury had found appellant guilty of the indicted offense and appellant
pleaded true to the prior felony convictions, the trial court proceeded to hear
testimonial evidence in the punishment portion of the trial.Â  During this part of the trial, the State
called Leo Ramirez, an employee of the Texas Department of Criminal Justice
(TDCJ), as a witness.Â  Ramirez described
his position as a sergeant in the security threat group of the TDCJ.Â  Further, Ramirez testified that his main job
involved the subject of gang intelligence.Â 
As part of his job, Ramirez stated he was familiar with the reports
generated at TDCJ that referenced an inmateÂs participation in a prison
gang.Â  Eventually, Ramirez testified that
appellant was a member of the Aryan Brotherhood of Texas.Â  Upon cross-examination, Ramirez testified
that appellant was transferred to another unit prior to his last parole in an
attempt to disassociate him from the gang.Â 
However, Ramirez testified that, according to the records of TDCJ,
appellant did not successfully complete his disassociation program.Â Â  

Â Â Â Â Â Â Â Â Â Â Â  During
the conference on the courtÂs charge on punishment, appellantÂs trial counsel
requested that the jury be informed that the sentence imposed would be a
mandatory cumulative sentence case because of appellantÂs prior conviction in
Cause No. 55,555-E for the offense of possession of a controlled substance in a
drug-free zone.[2]Â  The trial court denied the requested
instruction. Â The jury returned a
punishment verdict of confinement for 50 years.Â 


Â Â Â Â Â Â Â Â Â Â Â  Following
the dismissal of the jury, the trial court was preparing to sentence appellant
to confinement for 50 years in the ID-TDCJ when the State reminded the court
that the sentence was subject to the mandatory cumulative sentencing provisions
of the Texas Health & Safety Code.Â  See
Tex. Health & Safety Code Ann.
Â§ 481.134(h) (West 2010).[3]Â  The trial court then pronounced the sentence
and the cumulative nature of the sentence without objection from appellant.

Â Â Â Â Â Â Â Â Â Â Â  Appellant
has now appealed bringing forth six issues to this court.Â  AppellantÂs issues contend that the trial
court erred in: 1) cumulating appellantÂs sentence in the instant case with
another sentence, 2) refusing appellantÂs requested instruction in the
punishment charge, 3) allowing evidence before the jury about appellantÂs
membership in a prison gang, and 4) assessing costs and attorneys fees to be
repaid.Â  We will affirm the judgment of
the trial court in all aspects, except we will eliminate the order that
appellant repay the county the cost of his appointed attorney.

Cumulative Sentencing

Â Â Â Â Â Â Â Â Â Â Â  AppellantÂs
first issue implies that the trial courtÂs cumulation
of appellantÂs sentence was erroneous due to evidentiary sufficiency.Â  However, upon closer reading, it becomes
apparent that appellant has taken that approach for one reason only: there has
been a complete procedural default on any issue related to the trial courtÂs
cumulative sentence order.Â  See Tex. R. App. P. 33.1(a).Â  Appellant failed to voice any objection at
the time he was ordered to serve his 50 year sentence after the completion of
the sentence in Cause No. 55,555-E. Â To preserve a complaint for our review, a party must have
presented to the trial court a timely request, objection, or motion that states
the specific grounds for the desired ruling if they are not apparent from the
context of the request, objection, or motion. Tex. R. App.
P. 33.1(a)(1); Lovill v. State, 319 S.W.3d 687, 691-92 (Tex.Crim.App. 2009).Â  

Â Â Â Â Â Â Â Â Â Â Â  In order to circumvent the consequences of failing to
object to the trial courtÂs action in cumulating the sentences, appellant now
contends that, because there was no evidence that the punishment in Cause No.
55,555-E was increased via the drug-free zone finding, we must reform the
judgment to strike the cumulative effect of the trial courtÂs order.Â  AppellantÂs point is utterly without
merit.Â  The only authority appellant offers consists of authority for the very general
proposition that challenges to the evidentiary sufficiency to support a verdict
need not be preserved by a contemporaneous objection.Â  See Mayer v.
State, 309 S.W.3d 552, 556 (Tex.Crim.App. 2010)
(dealing with a failure to object to a restitution order for repayment of
attorney fees).Â  Appellant cites
this Court to no authority for the proposition that he can now attack a jury
finding from a previous trial on a sufficiency basis. 

Â Â Â Â Â Â Â Â Â Â Â  AppellantÂs sentence was mandatorily cumulated pursuant
to section 481.134(h) which makes mandatory that punishment for a crime
committed under the section may not run concurrently with Âa conviction under
any other criminal statute.ÂÂ  See
Â§ 481.134(h).Â  ÂThis sectionÂ refers to
ÂDrug-Free Zones.Â Id.Â  The
conviction that appellant is now appealing was not based upon section 481.134;
therefore, it falls into the category of Âa conviction under any other criminal
statute.ÂÂ  See Williams v.
State, 253 S.W.3d 673, 678 (Tex.Crim.App.
2008).Â  So, appellant was facing
sentencing for an offense other than a drug offense committed in a drug-free
zone.Â  As the record reflects, the
conviction in Cause No. 55,555-E was for possession of a controlled substance
in a drug-free zone.Â  The above referenced
mandatory cumulative sentencing was, therefore, before the trial court.Â  Â§ 481.134(h).Â  When the trial judge cumulated appellantÂs
sentences, he was applying a mandatory provision of the relevant statute.Â  The plain meaning of the statute is that the
trial court has no discretion to do more than he did: cumulate the
sentences.Â  See Thompson v.
State, 236 S.W.3d 787, 792 (Tex.Crim.App. 2007)
(appellate courts must give effect to the plain meaning of the statute, unless
the plain meaning leads to absurd consequences).Â  The plain meaning is as reflected above.Â  AppellantÂs first issue is overruled.

Jury Instruction

Â Â Â Â Â Â Â Â Â Â Â  In his second issue, appellant contends that the trial
court erred when it refused to give a requested instruction to the jury that
appellantÂs sentence would have to be served consecutively.Â  AppellantÂs theory is that the fact that
appellant had to serve his sentence consecutively was something the jury should
be allowed to consider in order to make an informed decision about the
punishment to be given to appellant.Â 
Appellant cites the Court to Haliburton
v. State, 578 S.W.2d 726 (Tex.Crim.App. 1979),
for the apparent proposition that the requested instruction should have been
given.Â  Haliburton
involved a jury sending a note out to the trial court during deliberations
inquiring about whether or not the defendant would serve the sentences in the
two cases tried together concurrently.Â  Id. at 728.Â 
The trial judge answered in the affirmative.Â  Id.Â 
After being convicted, the defendant appealed claiming that it was an
abuse of discretion for the trial court to have given the supplemental charge
and that the error was harmful.Â  The
Court of Criminal Appeals held that the trial court did not abuse its
discretion in giving the supplemental charge regarding whether the sentences
would be served concurrently.Â  Id. at 729.

Â Â Â Â Â Â Â Â Â Â Â  From this holding, appellant now asks this Court to rule
that the converse action of a trial courtÂrefusing to give a charge advising
the jury that the sentences would be served consecutivelyÂwould be error.Â  This issue has been addressed by other courts
of appeals since the Haliburton decision.Â  In Levy v. State, 860 S.W.2d 211, 213
(Tex.App.ÂTexarkana 1993, pet. refÂd),
the Texarkana court held that refusal to answer the juryÂs question about
whether sentences being considered would run concurrently or consecutively was
not error.Â  As the citation reflects, the
Texas Court of Criminal Appeals refused a petition for review in the case.Â  Such was the decision in Stewart v. State,
221 S.W.3d 306, 316 (Tex.App.ÂFort Worth 2007, no
pet.), in which the court held that the refusal to advise the jury that the
sentence in question would be served consecutively was not error.Â  In Clay v. State, 102 S.W.3d 794, 798
(Tex.App.ÂTexarkana 2003, no pet.), the Texarkana
court again visited this issue and said it would have been error for the trial
court to give the requested instruction about the sentences being served
consecutively.Â  We believe that the
opinions referenced above reflect the correct state of the law.Â  Accordingly, we overrule appellantÂs second
issue.

Â 

Gang Membership

Â Â Â Â Â Â Â Â Â Â Â  During the punishment phase of the trial, the State
proffered the testimony of Leo Ramirez, an employee of the TDCJ.Â  During his testimony, Ramirez testified
without objection that appellant was a member of the Aryan Brotherhood of
Texas.Â  There was no request to limit the
juryÂs consideration of RamirezÂs testimony at the time it was admitted.Â  Subsequently, when the courtÂs charge on
punishment was prepared, there was no request from appellant to limit the
consideration of this evidence.Â  In
appellantÂs third issue, he now complains that the failure of the trial court
to instruct the jury that such evidence could be considered only for purposes
of appellantÂs reputation and character was egregious error.Â  The record also reveals that the StateÂs witness
was only allowed to testify about appellantÂs membership in the gang.Â  Because the trial court sustained appellantÂs
objections, Ramirez was not allowed to testify about any of the gangÂs alleged
activities.

Â Â Â Â Â Â Â Â Â Â Â  Initially, we must determine if appellant has waived any
alleged error by either failing to object to the evidence that appellant was a
member of the Aryan Brotherhood of Texas when it was offered.[4]Â  After the evidence was admitted, appellant
did not request that the juryÂs consideration of RamirezÂs testimony be limited
in any manner.Â  Finally, there was no
request for any instruction in the courtÂs charge on punishment.

Â Â Â Â Â Â Â Â Â Â Â  First, we address the admission of the evidence.Â  We review a trial courtÂs decision to admit
or exclude evidence under an abuse of discretion standard of review.Â  See Rodriguez v. State, 203 S.W.3d 837, 841 (Tex.Crim.App.
2006).Â  However, before we even get to
the application of that standard of review, we must ascertain whether the
question of the admissibility of the evidence has been preserved for
appeal.Â  To preserve a question regarding
admissibility of evidence for appeal, the party challenging the admission must
make a timely objection that places the trial court on notice as to what the
objection is.Â  See Tex. R. App. P. 33.1(a); Butler v. State, 872 S.W.2d 227,
236 (Tex.Crim.App. 1994).Â  Therefore, it appears that appellant has
waived any objection to the complained of testimony.

Â Â Â Â Â Â Â Â Â Â Â  Next, even if we assume that appellant can now lodge some
appellate objection to the admission of the testimony, we are faced with the
fact that appellant also did not request any limiting instruction at the time
the evidence was admitted.Â  In Williams
v. State, the Texas Court of Criminal Appeals addressed that issue and held
that the failure to request a limiting instruction at the time the evidence was
admitted means that the evidence can be used by the jury for all purposes and
relieves the trial judge of any requirement of giving a limiting instruction in
the courtÂs charge.Â  273
S.W.3d 200, 230 (Tex.Crim.App. 2008).Â  Accordingly, the failure of the trial court
to give a limiting instruction is not error.Â 


Â Â Â Â Â Â Â Â Â Â Â  Assuming, arguendo, that the
failure of appellant to object to admission of the evidence at issue and the
failure to request a limiting instruction on the evidence at the time of
admission of the same does not bar this CourtÂs ability to consider his
argument, appellant has still failed to demonstrate that the failure to give
the instruction limiting the juryÂs use of the gang membership was egregious
error.Â  For purposes of our analysis,
egregious error is error that denies appellant a fair and impartial trial.Â  See Almanza
v. State, 686 S.W.2d 157, 171 (Tex.Crim.App.
1984).Â  To support his position that the
failure of the trial court to give a limiting instruction was egregious,
appellant cites the Court to Dawson v. Delaware, 503 U.S. 159, 163, 112 S.Ct. 1093, 116 L.Ed.2d 309 (1992).Â  However, Dawson is distinguishable
from our case in a number of ways.Â 
Initially, we observe that Dawson was a murder case and the
evidence of gang membership was offered during the punishment phase while the
jury was considering life in prison or the death sentence.Â  Id. at 161.Â  Second, in Dawson, after the State had
given notice of intent to use the appellantÂs gang affiliation against him in
the punishment phase, appellant objected to the admission of the evidence.Â  Id. at 162.Â  Before the punishment phase of the trial
began, the parties entered into a stipulation that the State would not call
their expert witness on gang activities and appellant would agree to a limited
stipulation about the Aryan Brotherhood being a white racist prison gang and
that appellant had Aryan Brotherhood tattooed on his hand.Â  Id.Â 
The essence of the U.S. Supreme CourtÂs ruling was that the narrowness
of the stipulation left the evidence totally without relevance to the
sentencing procedure.Â Â  Id. at 165.Â 
Because the evidence was not relevant, it should not have been admitted.Â  However, the Court in Dawson did not
address the issue of harm, because that issue was not before it.Â  Id. at 168-69.Â  Appellant simply concludes, without any real
analysis, that egregious harm is apparent.Â 


Â Â Â Â Â Â Â Â Â Â Â  However, such is not the case.Â  In the case before the Court, appellant was
convicted of a second-degree felony offense enhanced by two prior felony
convictions.Â  These facts subjected
appellant to a punishment range of imprisonment in the ID-TDCJ for life or any
term of not more than 99 years or less than 25 years.Â  The jury assessed a sentence of 50
years.Â  When trying to ascertain if an
appellant has suffered egregious harm, we are instructed to review the entire
record to determine if appellant has not had a fair and impartial trial.Â  Almanza, 686 S.W.2d at 171.Â 
Our review of the record reveals that appellant received a 50-year
sentence, which is approximately the mid-range of the punishment range
possible.Â  Our review of the final argument
reveals that the State mentioned the Aryan Brotherhood one time in final
arguments.Â  The State concentrated its
argument on the fact that this was appellantÂs third conviction.Â  Therefore, we find that, even if appellant
did not waive the issue procedurally, there has been no showing of egregious
harm.Â  Id.Â  AppellantÂs issue is overruled.

Attorney Fees and Court
Costs

Â Â Â Â Â Â Â Â Â Â Â  AppellantÂs fourth, fifth, and sixth issues attack
various aspects of the trial courtÂs order regarding costs and, specifically,
attorney fees.Â  First, appellant contends
that the trial court must orally pronounce the requirement to reimburse
attorney fees before the same can be included in the judgment.Â  He next contends that a clerkÂs action of
attaching a certified copy of the bill of costs that includes the attorney fees
provision to the judgment does not constitute an order to pay costs.Â  Finally, he contends that there is no
evidence that appellant has the ability to repay the county for the cost of his
attorney.Â  

Â Â Â Â Â Â Â Â Â Â Â  We will sustain appellantÂs final issue.Â  As we have held previously, the requirement
that a recipient of legal services repay the county the costs of an appointed
attorney must be based on some evidence that the recipient have the financial
resources to offset some or all of the cost of appointed counsel.Â  See Tex.
Code Crim. Proc. Ann. art.
26.05(g) (West Supp. 2010); Mayer v. State, 274 S.W.3d 898, 901 (Tex.App.ÂAmarillo 2008), affÂd,
309 S.W.3d 552 (Tex.Crim.App. 2010).Â  In Mayer, after determining that there
was no evidence to support the order to pay attorney fees, we ordered the fees
stricken from the judgment.Â  Id. at 902.Â 
The Texas Court of Criminal Appeals affirmed the decision to strike the
offending attorney fees from the judgment rather than remanding the case for a
new hearing on punishment.Â  Mayer,
309 S.W.3d at 557.Â 
Accordingly, we sustain appellantÂs sixth issue and order that the
requirement to repay the court appointed attorney fees be deleted from the
judgment.Â  

Conclusion

Â Â Â Â Â Â Â Â Â Â Â  We
affirm the judgment of the trial court as modified regarding the repayment of
attorney fees.

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Mackey
K. Hancock

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Justice

Publish.Â  











[1]
See
Tex. Health & Safety Code Ann.
Â§ 481.115(d) (West 2010).





[2]
AppellantÂs conviction in Cause No. 55,555-E was
for possession of a controlled substance, methamphetamine, in an amount of more
than four grams but less than 200 grams.Â 
See Tex. Health &
Safety Code Ann. Â§ 481.115(d).Â 
Further, appellantÂs possession occurred within a drug-free zone.Â  See id. Â§ 481.134(c).Â  Appellant was sentenced to 30 years
confinement in the ID-TDCJ in that case.

Â 





[3]
Further reference to the Texas Health &
Safety Code Annotated will be by reference to Âsection ___Â or ÂÂ§ ___Â.





[4]
AppellantÂs only objection came when Ramirez
tried to testify about what the constitution of the Aryan Brotherhood said and
what the function of the gang was inside the prison.